# CIRCUIT COURT OF THE CITY OF NORFOLK

Susan R. Kosiek

v.

Virginia Employment Commission
and Children's Hospital
of the King's Daughters

July 23, 2002

Case No. (Chancery) CH01-1548

BY JUDGE MARC JACOBSON

The instant matter comes before this Court on Petitioner Susan R. Kosiek's Petition for Judicial Review following a determination by the Virginia Employment Commission that she was ineligible for unemployment benefits.

From October of 1999 until April 4, 2001, Susan R. Kosiek (Petitioner) worked as a Lab Systems Facilitator at the Children's Hospital of King's Daughters (CHKD) in Norfolk, Virginia, after being hired away from Sentara General. At the time of her recruitment, Petitioner was told that her work schedule at CHKD would be the same as it was at Sentara (ten-hour days, Monday, Tuesday, Thursday, and Friday) in order to accommodate Petitioner's weight loss/maintenance meeting schedule.

The CHKD director with whom Petitioner entered into this oral agreement subsequently died. After his death, Petitioner's supervisor was directed to provide better weekend lab coverage for the emergency room. In order to accomplish this coverage, Petitioner was advised that her work schedule would permanently change to an eight-hour day, five days a week schedule, effective Wednesday, April 4, 2001.

After receiving the notification of the change in her work schedule, Petitioner advised CHKD that she could not work on Wednesdays, even though she worked on Wednesdays in the past when required. Her supervisor proposed that in order for Petitioner to have Wednesdays off, she could work every other weekend. Petitioner indicated that this was not possible, because she had another weight control meeting on Saturdays.

Petitioner then approached CHKD with several alternative proposals: working part-time, job-sharing, working a half-day Wednesday, working PRN, working every third or fourth weekend or a transfer to a lower paying position. None of these alternatives was acceptable to CHKD.

On March 25, 2001, Petitioner wrote a letter to the President of CHKD regarding the situation and, as a result, met with the CHKD human resources manager and the director of her department. At this meeting, it was explained to Petitioner that her hours needed to be changed in order to provide weekend lab coverage for the emergency room. During the course of the meeting, Petitioner was asked whether or not she would be coming to work on Wednesday, April 4, 2001, pursuant to the revised schedule. Petitioner informed them that she would not and, at this time, Petitioner was informed that she would be discharged if she did not come to work on April 4, 2001.

Petitioner failed to appear for work, as scheduled, on April 4, 2001. That afternoon, Petitioner's CHKD supervisor called her and informed Petitioner that she was discharged from her employment with CHKD.

Petitioner proceeded to file for unemployment insurance. She was deemed not qualified for unemployment insurance by a Deputy of the Virginia Employment Commission (VEC) after it was determined that her refusal to work on Wednesday, April 4, 2001, constituted misconduct. Petitioner appealed this determination and the matter came before an Appeals Examiner. After taking the parties' testimony, the Appeals Examiner reversed the VEC Deputy's decision, determining that Petitioner was eligible for benefits after finding that CHKD discharged Petitioner, but not for reasons constituting misconduct. CHKD appealed the Appeals Examiner's ruling.

On appeal, the VEC was basically faced with two issues: (1) did the claimant leave work voluntarily without good cause as provided in Virginia Code § 60.2-618(1); and (2) was the claimant discharged due to misconduct connected with work as provided in Virginia Code § 60.2-618(2)?

The VEC concluded that Petitioner's "separation should be properly considered as a voluntary leaving under the Shuler analysis" noting that, even if Petitioner was discharged by CHKD, she would likely still be disqualified for benefits due to her insubordination in not accepting a change in her schedule.

After review and consideration of the VEC decision, this Court finds that there was sufficient evidence upon which the VEC could find that Petitioner voluntarily, and without good cause, left her position at CHKD. Virginia Code § 60.2-618 provides, in part:

> An individual shall be disqualified for benefits upon separation from the last employing unit. . . .
> (a)(1) For any week benefits are claimed . . . if the Commission finds such individual is unemployed because he left work voluntarily without good cause. . . ."

"On review, [this Court] must consider the evidence in the light most favorable to the finding by the Commission." *Virginia Employment Comm'n v. Peninsula Emergency Physicians, Inc.*, 4 Va. App. 621, 626, 359 S.E.2d 552, 554 (1987). In accordance with the appellate standard of review, the Court considered "the evidence in the light most favorable to the finding by the Commission." *Wells Fargo Alarm Servs., Inc. v. Virginia Employment Comm'n*, 24 Va. App. 377, 383, 482 S.E.2d 841, 844 (1997) (internal citations omitted). "The findings of the Commission as to the facts, if supported by the evidence . . . shall be conclusive and the jurisdiction of the Court shall be confined to questions of law." Va. Code Ann. § 60.2-625(A) (2001).

"[A]nalyzing an employee's behavior within the disqualification provisions of § 60.2-618(2) is a mixed question of law and fact reviewable by this Court on appeal." *Virginia Employment Comm'n v. Sutphin*, 8 Va. App. 325, 327, 380 S.E.2d 667, 668 (1989) (quoting *Israel v. Virginia Employment Comm'n*, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988)).

Thus, the first question this Court must address is whether the law and the facts support the Commissions finding that Petitioner's actions constituted voluntarily leaving her job without good cause.

In *Shuler v. Virginia Employment Comm'n*, 9 Va. App. 147, 151, 384 S.E.2d 122, 124 (1989), the Court of Appeals stated that "absence from work without authorization will constitute a voluntary abandonment of a job if done with notice that a discharge will result. . . ." 9 Va. App. 147, 151, 384 S.E.2d 122, 124 (1989). In this case, evidence shows that Petitioner received notice that if she failed to report for work on April 4, 2001, she would be discharged by CHKD. Petitioner failed to report and thus, in accordance with, and giving deference to, the VEC findings, Petitioner's acts were volitional and voluntary. Whether or not she received a call terminating her after the

unexcused absence is irrelevant. Petitioner's unexcused, unauthorized absence from work on Wednesday, April 4, 2001, is sufficient to show that she voluntarily left her employment.

Thus, where there is evidence to support the finding that Petitioner voluntarily left her employment, the next issue is whether or not there is evidence that she had "good cause" to do so.

> When determining whether good cause existed for a claimant to voluntarily leave employment, the commission and the reviewing courts must first apply an objective standard to the reasonableness of the employment dispute and then to the reasonableness of the employee's efforts to resolve that dispute before leaving the employment. In making this two-part analysis, the claimant's claim must be viewed from the standpoint of a reasonable employee. "Factors that . . . are peculiar to the employee and her situation are factors which are appropriately considered as to whether good cause existed. . . ."

*Umbarger v. Virginia Employment Comm'n*, 12 Va. App. 431, 435-36, 404 S.E.2d 380, 383 (1991) (internal citations omitted).

In *Lee v. Virginia Employment Comm'n*, the appeals court considered the requirement of good cause stating that:

> "before relinquishing his employment . . . the claimant must have made every effort to eliminate or adjust with his employer the difference or conditions of which he complains. He must take those steps that could be reasonably expected of a person desirous of retaining his employment before hazarding the risks of unemployment.

1 Va. App. 82, 85, 335 S.E.2d 104, 106 (1985).

In *Lee*, the reasonableness of Lee's grievances with his employer was not in dispute. The issue was whether his actions constituted good cause where Lee entered into a written agreement to settle a grievance with his employer. When the employer failed to abide by the agreement, Lee complained to his superiors who refused to address the issue. Lee then resigned his position believing he had no other alternative to enforce the agreement. In fact, there was a grievance procedure set up for this type of situation. *Id.*

The *Lee* Court addressed the issue as to whether or not Lee exhausted all reasonable steps necessary to eliminate the differences with his employer. The Court then held that Lee had voluntarily terminated his employment without good cause because he had not pursued the grievance procedure, an available remedy, before he left the position. *Id.*

Likewise, in the instant case, the reasonableness of Petitioner's grievance with CHKD was not in dispute. Both parties agree that Petitioner had an agreement with the department's former director that she could work a set ten-hour, four days a week shift and that CHKD was no longer able to accommodate that schedule, despite the agreement. Thus, the issue is whether Petitioner's efforts to resolve the dispute before she left the employment were reasonable from the standpoint of what a reasonable employee would do in this situation. *Umbarger*, 12 Va. at 435-36.

In this case, Petitioner attempted to address and resolve the issue of scheduling by proposing alternatives, writing a letter, and meeting with her superiors. This appears to be in line with what a reasonable employee would do to resolve the situation. However, further testimony shows that that there were other weight control meetings Petitioner stated she could have attended in order to be able to work on Wednesday. However, she chose not to change her meeting days and times, even in order to keep her employment. Appeals Tr., p. 19, lines 19-24.

The courts have stated that personal factors and situations, peculiar to individual employees, are to be taken into consideration in determining good cause. *Johnson v. Virginia Employment Comm'n*, 8 Va. App. 441, 447, 382 S.E.2d 476, 478 (1989). Here, however, Petitioner had a weight problem with which she obviously wanted to maintain her success by continuing to attend the same meetings she had attended. However, a reasonable person desirous of retaining employment would have changed a meeting schedule in order to keep the position, rather than sacrifice the position for the meeting, particularly when there were alternative meetings available.

Thus, while the evidence does facially support a finding that Petitioner did make reasonable attempts to maintain her employment, she did not make "every effort to eliminate or adjust . . . the difference or conditions" of which she complained and, therefore, did not have good cause to voluntarily leave CHKD.

Accordingly, this Court affirms the VEC's decision disqualifying Petitioner from unemployment benefits finding an absence of fraud and sufficient evidence showing that Petitioner voluntarily left her position at CHKD without good cause.