COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Petty and McCullough
Argued at Alexandria, Virginia

UNPUBLISHED

KATHLEEN C. HAMPTON

v.      Record No. 1163-13-4

VIRGINIA EMPLOYMENT COMMISSION
 AND PUBLIC UTILITIES REPORTS, INC.

MEMORANDUM OPINION[*] BY
CHIEF JUDGE WALTER S. FELTON, JR.
FEBRUARY 25, 2014

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

Jonathan A. Nelson (Day & Johns, PLLC, on briefs), for appellant.

Joshua E. Laws, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee Virginia Employment
Commission.

No brief or argument for appellee Public Utilities Reports, Inc.


Kathleen C. Hampton ("claimant") appeals the judgment of the Fairfax County Circuit

Court ("circuit court"), affirming the decision of the Virginia Employment Commission ("the

Commission") that claimant was ineligible to receive unemployment compensation benefits because

she left work voluntarily without good cause.  Claimant asserts that the circuit court erred by

affirming the Commission's decision because her employer did not meet its burden to prove that

claimant left work voluntarily and that the ruling was unsupported by the evidence in the record.

Claimant also contends the circuit court erred by affirming the Commission's decision because the

Commission improperly relied on unsworn statements by claimant's former employer in

determining that she was ineligible for benefits.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

We "consider the evidence in the light most favorable to the finding by the Commission." Va. Emp't Comm'n v. Trent, 55 Va. App. 560, 565, 687 S.E.2d 99, 101 (2010) (citation omitted). The evidence showed that, from February 11, 2008 to April 18, 2012, claimant worked as a full-time technical legal editor for Public Utilities Reports, Inc. ("employer"). Phillip Cross ("Cross") was claimant's direct supervisor. Cross worked for employer in his capacity as vice president and human resources officer. Claimant often disagreed with her supervisor regarding employer's overtime and paid leave policies.

On Monday, April 16, 2012, claimant called employer to report that she was sick and that she would be unable to work. She returned to work the following day. On Wednesday, April 18, 2012, her supervisor told claimant that she needed to complete a paid time off ("PTO") form for the day that she had been out of the office. Claimant told her supervisor that she should not have to fill out a PTO form because she planned to work at least forty hours during the remainder of the week. Her supervisor explained to claimant that her position was contrary to employer's policies, and repeated his direction that she complete a PTO form for the day she was out of the office.[1] He told claimant that she was not required to work more than forty hours per week, that he did not want her to work more than forty hours per week, and that she would not be compensated for hours worked above forty hours. He reiterated to claimant that she needed to account for the day she was out of the office by filling out a PTO form.

When claimant continued to argue with her supervisor, he told her that she "[had] other options" if she did not want to complete the PTO form. Claimant asked, "[O]h, like the option to quit[?]" He did not respond to claimant's inquiry. Claimant then asked her supervisor, "You just

---

[1] Because claimant had already allocated her PTO days for the calendar year, her absence on Monday, April 16, would ultimately be deemed unpaid leave.

don't want me here anymore, do you?" He replied, "No." Claimant then told him that "[she] [would not] stay where [she] [was] not wanted," and began to pack her belongings. When a coworker "begged" her to stay, claimant repeated that she would not stay where she was not wanted and that she would not "put up with [such] bullying." Claimant left the office and did not return.

The Commission found

> that the proximate cause of the claimant's separation from employment flowed from her action in challenging the supervisor's instructions over putting in a leave form for her April 16th unscheduled absence from work or his refusal to permit her to make up her time for that week. This was followed by the claimant's raising the subject of her quitting her job, followed by her initiating questioning of the supervisor as to whether he still wanted her there or not.

> \* \* \* \* \* \* \*

> In the Commission's opinion, while the employer does assume the burden of non-persuasion as to a voluntary leaving, the claimant's own evidence clearly demonstrates that she voluntarily walked off the job that day, rather than being discharged from employment. . . . The Commission flatly rejects the contention that the claimant's supervisor "provoked" her into quitting that day, or her arguments to the effect that the record fails to evidence a voluntary separation from employment.

The circuit court affirmed the Commission's decision denying unemployment compensation benefits to claimant. It found that claimant's dispute with her supervisor over employer's leave policy "was not an objectively reasonable employment dispute." The circuit court

> agree[d] with the Commission that "while the supervisor may have acted unprofessionally in acknowledging that he did not want her there," he did not fire her that day, and the dispute centered on a common employment policy: "most employers require employees to obtain approval or authorization for overtime before it is worked."

- 3 -

II.  ANALYSIS

A.

The determination of whether an employee voluntarily quit work without good cause is a mixed question of law and fact.  Snyder v. Va. Emp't Comm'n, 23 Va. App. 484, 491, 477 S.E.2d 785, 788 (1996).  The Commission's legal determinations are reviewed *de novo* by this Court.  Smith v. Va. Emp't Comm'n & Swift Transp. Co., 59 Va. App. 516, 519, 721 S.E.2d 18, 20 (2012).  However, "the Commission's findings of fact, if supported by the evidence and in the absence of fraud, are conclusive."  Lee v. Va. Emp't Comm'n, 1 Va. App. 82, 85, 335 S.E.2d 104, 106 (1985).  Accordingly, "the [Commission's] findings may be rejected only if, in considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion."  Craft v. Va. Emp't Comm'n, 8 Va. App. 607, 609, 383 S.E.2d 271, 273 (1989).

Code § 60.2-618(1) provides, in pertinent part, that an employee is ineligible to receive unemployment compensation benefits when the Commission finds that the employee voluntarily quit work without good cause.  The employer bears the burden of proving that the claimant left work voluntarily.  Shuler v. Va. Emp't Comm'n, 9 Va. App. 147, 150, 384 S.E.2d 122, 124 (1989).  If the employer satisfies its burden of proof that the claimant left work voluntarily, the burden of proof shifts to the claimant to demonstrate good cause for leaving work.  Actuarial Benefits & Design Corp. v. Va. Emp't Comm'n, 23 Va. App. 640, 645, 478 S.E.2d 735, 738 (1996).

> The term "voluntary" connotes "'[u]nconstrained by interference; unimpelled by another's influence; spontaneous; acting of oneself . . . [r]esulting from free choice.'"  Barnes v. Singer Co., 376 S.E.2d 756, 758 (N.C. 1989) (quoting Black's Law Dictionary 1413 (5th ed. 1979)).  An employee's intention to quit may be discerned from words or conduct inconsistent with the maintenance of an employer/employee relationship.  See Tate v. Briggs & Stratton Corp., 126 N.W.2d 513, 515 (Wis. 1964).

Shuler, 9 Va. App. at 150-51, 384 S.E.2d at 124.

(i)

Here, the record on appeal amply supports the Commission's finding that claimant voluntarily left work. On April 18, 2012, claimant argued with her supervisor over employer's leave policy, notwithstanding that her supervisor had previously explained the policy to her. Rather than adhere to employer's policy that she complete a "paid time off" form to account for the day she had been absent from the office, claimant suggested that she had the option to quit work. Spurned by what she perceived as a negative comment from her supervisor, claimant stated she would not work where she was not wanted, collected her personal belongings from her cubicle, and left the office. She did not contact employer again until May 7, 2012, to inquire about unemployment and other benefits. Employer testified that continuing work remained available for claimant after she left the workplace, and the Commission explicitly rejected claimant's contention that employer "provoked" her to quit. The evidence in the record established that claimant, of her own accord, acted in a manner inconsistent with maintaining a working relationship with employer. Accordingly, the circuit court did not err by affirming the Commission's finding that employer met its burden to prove that claimant left work voluntarily.

(ii)

To determine whether good cause existed for claimant to voluntarily leave work,

> the commission and the reviewing courts must first apply an objective standard to the reasonableness of the dispute and then to the reasonableness of the employee's efforts to resolve that dispute before leaving the employment. In making this two-part analysis, the claimant's claim must be viewed from the standpoint of a reasonable employee.

Umbarger v. Va. Emp't Comm'n, 12 Va. App. 431, 435-36, 404 S.E.2d 380, 383 (1991).

To constitute "good cause" for quitting work, a claimant must prove that her employer created workplace conditions so intolerable that she "had no reasonable alternative except to quit her job." Id. at 436, 404 S.E.2d at 383.

Here, the Commission found that claimant's dispute with her supervisor over employer's leave policy did not constitute "good cause" for leaving work under Code § 60.2-618(1). The Commission found that employer reasonably required its employees to obtain preauthorization for overtime work or for taking time off. In addition, applying its longstanding precedent, the Commission determined that "good cause" under Code § 60.2-618(1) cannot be established by an employee who quits her job merely because she believes she will eventually be fired. We agree. Claimant's dispute with employer arose solely out of her refusal to comply with employer's uniformly enforced absence policy. Claimant possessed numerous alternatives to quitting, including that she complete the PTO form as required by her employer. The Commission correctly concluded that claimant's dispute with employer was not so compelling, necessitous, or substantial that it left her with no reasonable alternative other than to quit work. Phillips v. Dan River Mills, Inc., Commission Decision 2002-C (June 15, 1955).

In addition, the Commission correctly concluded that claimant's failure to elevate her dispute with her supervisor to the company president was not reasonable. To constitute "good cause" for a claimant to voluntarily leave employment, the consistent position of the Commission, "acquiesced in by the General Assembly," has required an employee to "take those steps that could be reasonably expected of a person desirous of retaining his employment before hazarding the risks of unemployment." Lee, 1 Va. App. at 85, 335 S.E.2d at 106. Here, claimant failed to notify the company president of her dispute with her supervisor. The Commission found incredible claimant's assertion that she believed the president of the company had no authority over her supervisor, the vice president. Because claimant did not elevate her complaint to the company president, she failed to take all reasonably expected steps to resolve her dispute with her supervisor.

Accordingly, we affirm the decision of the circuit court upholding the Commission's decision that claimant left work voluntarily and without good cause, and was therefore ineligible for unemployment compensation benefits.

B.

Claimant also asserts that the circuit court erred by finding that the Commission properly considered, as part of the record of the case, employer's unsworn statements to the deputy examiner.

16 Va. Admin. Code § 5-80-10(B) provides that:

> This informal interview [with the deputy examiner] shall not be recorded in any way, although notes can be taken by the deputy. *Statements made by parties or witnesses shall not be taken under oath* and formal examination or cross-examination shall not be permitted. The deputy shall direct questions to the parties and witnesses. The parties may also ask questions of each other and the witnesses. Rebuttal to statements made by opposing parties or witnesses shall be permitted. . . . *The record of facts of the proceeding shall become a part of the commission's records.*

(Emphasis added.) See also 16 Va. Admin. Code § 5-80-20(F)(4) ("On motion of the appeals examiner, or any party, documents already in a claimant's file or obtained during the course of a hearing may be admitted into the record as exhibits provided they are relevant to the issues in dispute.").

During claimant's telephonic hearing with the appeals examiner, the appeals examiner explained to claimant that his proposed Exhibit 6 contained the record of facts obtained by the deputy examiner, including employer's statement regarding claimant's departure from the office. The appeals examiner explicitly stated that Exhibit 6 contained "the notes that the deputy [examiner] took when he had the fact finding interview with both you and the employer." When the appeals examiner asked claimant if she had any objection to the exhibits being entered into the record, claimant replied, "[n]o, none at all."

- 7 -

In Baker v. Babcock & Wilcox Co., 11 Va. App. 419, 399 S.E.2d 630 (1990), this Court held that, where a claimant seeks an initial award of unemployment compensation benefits, she "possesse[s] no absolute constitutional right of cross-examination." Id. at 427, 399 S.E.2d at 635 (footnote omitted). Moreover, the Commission does not err by considering employer's unsworn statement to the deputy examiner where, as here, claimant did not object to entering employer's statement into the record, and where she did not seek to cross-examine employer at her hearing with the appeals examiner. "If claimant did not enjoy the right of confrontation and cross-examination or any of the other rights available to [her] under the laws and regulations, it was not because they were denied [her]; it was, insofar as the record discloses, only because [s]he did not pursue them." Klimko v. Va. Emp't Comm'n, 216 Va. 750, 762-63, 222 S.E.2d 559, 569-70 (1976). Accordingly, the circuit court did not err by finding that the Commission properly considered, as part of the agency record, employer's unsworn statements to the deputy examiner.

## III. CONCLUSION

For the foregoing reasons, and for the reasons articulated by the circuit court in its letter opinion, we hold: (i) that the Commission did not err by considering employer's unsworn statements to the deputy examiner as part of the agency record, and (ii) that the Commission did not err by finding claimant ineligible for unemployment compensation benefits.

Affirmed.