**Salem**

VIRGINIA EMPLOYMENT COMMISSION, et al.

v.

GAYTHA M. FITZGERALD

No. 0229-94-3

Decided January 10, 1995

COUNSEL

Donald G. Powers, Assistant Attorney General (James S. Gilmore, III, Attorney General; Lisa J. Rowley, Assistant Attorney General, on briefs), for appellant.

Michael S. Irvine, for appellee.

OPINION

**BRAY, J.**—Acting on application of Gaytha M. Fitzgerald (claimant) for unemployment benefits, the Virginia Employment Commission (commission) determined that she resigned employment without good cause and was precluded relief by Code § 60.2-618(1). Claimant petitioned for judicial review of this decision, and the trial court reversed the commission, finding that Code § 60.2-613(B) exempted claimant from disqualification. The commission appeals to this Court, complaining that the trial court erroneously applied Code § 60.2-613(B). We agree and reverse

the decision.

■ In undertaking judicial review of a commission decision pursuant to Code § 60.2-625(A), "the courts must consider the evidence in the light most favorable to the finding by the Commission." *Virginia Employment Comm'n v. Peninsula Emergency Physicians, Inc.*, 4 Va. App. 621, 626, 359 S.E.2d 552, 554 (1987) (citation omitted). Factual determinations of the commission, "if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Code § 60.2-625(A); *see Lee v. Virginia Employment Comm'n*, 1 Va. App. 82, 85, 335 S.E.2d 104, 106 (1985). Commission findings "may be rejected only if, in considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." *Craft v. Virginia Employment Comm'n*, 8 Va. App. 607, 609, 383 S.E.2d 271, 273 (1989) (citations omitted); *see Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988).

■ "[G]ood cause" for an employee to voluntarily leave employment within the intendment of Code § 60.2-618(1) "has not been specifically defined by the legislature or the Supreme Court." *Lee*, 1 Va. App. at 85, 335 S.E.2d at 106; Code § 60.2-618(1). However, the consistent view of the commission, "acquiesced in by the General Assembly," has required an employee to "take those steps that could be reasonably expected of a person desirous of retaining his employment before hazarding the risks of unemployment." *Id.*; *see Umbarger v. Virginia Employment Comm'n*, 12 Va. App. 431, 434-35, 404 S.E.2d 380, 383 (1991). "Good cause" requires a mixed determination of law and fact, applying "an objective standard to the reasonableness" of the employment circumstance and the employee's related conduct, which is reviewable on appeal. *Umbarger*, 12 Va. App. at 435-36, 404 S.E.2d at 383.

Factual findings of the commission which are undisputed and adopted by the parties directly from the administrative record established that:

[C]laimant's last 30-day employer was Blue Bird Body Company . . . where she worked from October 1, 1973, until October 29, 1992. She was a sewing machine operator, earning $11.35 per hour, working four ten-hour days per week.

[C]laimant subsequently worked for Apparel Marketing Industries, Inc., . . . from March 25, 1993, through April 8, 1993. She was a sewing machine operator, working full-time, earning $[4.25] per hour.

On the last day the claimant worked, she told her supervisor that she was leaving because she wanted to enroll in training under the Trade Act. She had read in the newspaper that former employees of Blue Bird East, who were laid off, were eligible for benefits under the Trade Adjustment Assistance program. The Commission ran an advertisement in the local newspaper indicating that former employees of the Blue Bird East company who were laid off between November 23, 1991, and March 1, 1995, were eligible to apply for benefits under the Trade Adjustment Assistance program. The advertisement indicated that some of the services available included weekly unemployment benefits [and] retraining assistance . . . . Former workers were directed to report to a specific location on April 13, 1993, to apply for benefits. The advertisement indicated that those employed or unable to attend the filing session on that date must call the Commission at the local office.

The claimant made an initial claim for benefits on April 12, 1993. She attended the meeting the next day to learn about her possibilities for training. As a result of the meeting, the claimant has been looking at a number of training programs, but has not yet entered one.[1]

The record further discloses that claimant reported on the "VEC CLAIM FOR BENEFIT" form that she "voluntarily quit," explaining that she "decide[d] to go to school." In a subsequent statement to commission staff, claimant confirmed that she resigned "to go to school [to] get training" offered through the Trade Act, but added that she "had . . . decided to quit to go to school" even before learning of the program. Later, during testimony before the appeals examiner, claimant attributed her decision to a newspaper notice advising of the "training," with related benefits. Thinking that "if [she] was unemployed, [she would] have a better chance of going to school . . .," be "ready to go," and before attending any informational meetings or contacting the

---

[1] To the date of the Appeals Examiner's hearing, May 17, 1993.

commission, claimant resigned her employment. Claimant acknowledged an awareness that participation in the program required approval of her application, but "felt sure" of acceptance.

■ Code § 60.2-618(1) provides that "[a]n individual shall be disqualified for benefits . . . if the Commission finds such individual is unemployed because he left work voluntarily without good cause." However, notwithstanding this statutory bar, no "otherwise eligible individual shall be denied benefits for any week because he is in training approved under § 2296 of the Trade Act (19 U.S.C. § 2101 et seq.), nor . . . by reason of leaving work to enter such training, provided the work left is not suitable employment,[2] or because of the application to any such week . . . of provisions in this law . . . relating to availability for work, active search for work, or refusal to accept work." Code § 60.2-613(B).

■ In denying claimant benefits, the commission concluded that "the provisions of Code § 60.2-613(B) do not apply in claimant's case," and she is barred by the preclusive effect of Code § 60.2-618(1). The commission noted that the statutory "phrase 'leaving work *to enter* such training,' contemplates that a claimant quits his or her job in order to *begin* training that has been approved," not in anticipation of it. (emphasis added). On review, however, the trial court was persuaded by claimant's assertion of the statutory Trade Act exception, Code § 60.2-613(B), ruling that her "actions . . . constitute[d] leaving work . . . to enter training" within the intendment of the statute, and reversed the commission.

It is well established that the "primary objective of statutory construction is to ascertain and give effect to legislative intent. A related principle is that the plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or strained construction." *Turner v. Commonwealth*, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983) (citation omitted). "[W]ords and phrases used in a statute should be given their ordinary and usually accepted meaning unless a different intention is fairly manifest." *Woolfolk v. Commonwealth*, 18 Va. App. 840, 847, 447 S.E.2d 530, 534 (1994); *Stein v. Commonwealth*, 12 Va. App. 65, 69, 402 S.E.2d 238, 241 (1991). "The province of construction is wholly within the domain of ambiguity, and that which is plain needs no interpretation." *Barnett v. D.L. Bromwell,*

---

[2] The unsuitability of claimant's employment is not an issue in this appeal.

*Inc.,* 6 Va. App. 30, 34, 366 S.E.2d 271, 273 (1988) (citation omitted).

 The intent of Code § 60.2-613(B) is clearly to enable qualified persons to resign employment to participate in a training program under the federal Trade Act, without incurring a loss of unemployment benefits. Consistent with this purpose, the statute expressly preserves such benefits upon voluntary termination "to enter" such program. Enter is "to go or come in," "to come or gain admission into a group." *Webster's Ninth New Collegiate Dictionary* 415 (1990). It is neither a technical term nor "word of art." *Stein,* 12 Va. App. at 69, 402 S.E.2d at 241. Used in the context of Code § 60.2-613(B), it clearly does not embrace plans, intentions or acts merely antecedent or preparatory to admission. Contrary to claimant's argument, a more expansive definition would be unnecessary to the purposes of the statute and would actually encourage speculative unemployment, with the attendant risk of lost benefits.

Claimant acknowledged an uncertainty related to the application process, but, nevertheless, voluntarily left her employment without first seeking information readily available to her and failed even to apply for the requisite training until several days later. The record clearly established that she could have applied for training while still employed, but opted to first resign based upon an unfounded belief that unemployment would improve the success of her application. Had claimant prudently left her employment only after the submission and approval of her application to enter the program, she would have clearly acted with good cause and enjoyed the protection of Code § 60.2-618(1).

We find, therefore, that the commission's ruling that claimant left her employment voluntarily and without good cause was supported by the evidence and consistent with the statute. Accordingly, claimant is disqualified from unemployment benefits pursuant to Code § 60.2-618(1), the judgment of the trial court is reversed, and the decision of the commission is reinstated.

*Reversed and final judgment.*

Koontz, J., and Elder, J., concurred.