COURT OF APPEALS OF VIRGINIA

Present:   Judges Russell, Friedman and Callins
Argued at Salem, Virginia


PHILLIP CLAY, JR.

v.      Record No. 1048-21-3

VIRGINIA EMPLOYMENT COMMISSION

MEMORANDUM OPINION[*]
JUDGE FRANK K. FRIEDMAN
JUNE 14, 2022

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

Blake K. Huddleston (James B. Feinman; James B. Feinman &
Associates, on briefs), for appellant.

Elizabeth B. Peay, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General; Monique A. Miles, Deputy Attorney
General; Joshua N. Lief, Senior Assistant Attorney General and
Chief, on brief), for appellee.


Phillip Clay, Jr. ("Clay") appeals the circuit court's order affirming the decision of the

Virginia Employment Commission ("VEC" or "Commission") denying his request for

unemployment benefits.  Clay's employer initially contested his efforts to qualify for

unemployment benefits.  After the employer prevailed before the deputy commissioner at the first

level of review, Clay announced his intention to pursue appellate relief.  The employer then

indicated that it would not "contest benefits" going forward and that it "declines to participate

further in the appeals process."  Despite the employer's absence from the subsequent proceedings,

the Commission continued to find that Clay was disqualified from receiving benefits, based upon

the record established before the deputy commissioner and incorporated into subsequent review.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The circuit court upheld the VEC's determination. Clay alleges: (1) there was insufficient evidence to prove he committed misconduct, (2) the circuit court's decision wrongly disregarded the employer's burden to prove misconduct, and (3) it was error to find that he was disqualified from receiving benefits. Upon reviewing the record and arguments of the parties, we affirm the circuit court's decision.

BACKGROUND

"Like the circuit court, we must 'consider the evidence in the light most favorable to the findings by the Commission.'" *Smith v. Va. Emp. Comm'n*, 59 Va. App. 516, 520 (2012) (quoting *Va. Emp. Comm'n v. Trent*, 55 Va. App. 560, 565 (2010)).

The Underlying Incident

Clay was employed as an assembly welder by BWXT Nuclear Operations Group, Inc. ("employer") in Lynchburg, Virginia from May 27, 2003, until his termination on June 6, 2019. To get into the work area, employees were required to pass through a security checkpoint and explosive detector—a safety procedure set up through the Federal Nuclear Regulatory Commission. On May 28, 2019, Clay arrived at work; there were two turnstiles leading through the security checkpoint, but one of them was closed. Clay, choosing not to wait in the line, "opened a rope barrier to a roped-off area, and walked through it, on his way to an explosive detector" despite a sign that read "Do Not Enter/Closed Strap." His actions were caught on video.

When hired, Clay received training on employer's security procedures and rules. Clay acknowledged employer's policies, which required, among other things, that Clay comply with security procedures. Employer's policies indicated that some conduct was so serious it could be cause for immediate termination, including "failure to comply with a Policy or Procedure resulting in significant potential for personal injury, property damage, or adverse regulatory

- 2 -

action" and "[g]ross negligence of duties, any willful violation of company policies and procedures, or any undesirable performance." Employer suspended Clay the same day the offense occurred, investigated the incident, and subsequently discharged him for breach of security measures.

<u>The Deputy Commissioner Disqualifies Clay from Benefits.</u>

Clay subsequently filed for unemployment benefits. Employer filed documentation supporting its argument that Clay was disqualified for misconduct. This filing included a record of facts explaining the security breach/misconduct. The facts presented relating to the rule violation were largely undisputed. The employer explained the discharge as follows:

> This is a nuclear facility. All safety procedures and protocols are set through the Federal Nuclear Regulatory Commission. On 5/28/19 he pulled one of those rope barriers that said do not enter down and entered the metal detector area. It's a secured facility and that line was closed. You have to pass through the security guards. This was a breech [sic] of security and he was terminated. He did not have authorization to go through the line. This was observed on video. . . . You cannot just walk through a barrier at a secured nuclear facility on your own.

For his part, Clay gave a very candid description of his conduct:

> I went through a security barrier without permission. It's one of those rope line barriers. Ussually [sic] the security guard waives me through. On this day no security guard waived me through. I onpened [sic] the barrier (even though it said this lane closed) and headed for the bomb and metal detector area. I did not thing [sic] I had done anything wrong. This was the only time I did it without authorization from the security guard . . . I agree I did not have permission on that day to go through it. I was not in a hurry. I was not late I just thought I was doing security a favor.

Here, Clay acknowledged that he had crossed the barrier without authorization, he had never done so before without permission, and the line was marked closed.

Based on the record, a deputy commissioner found that Clay was discharged for a violation of the employer's policy. The deputy concluded that Clay was disqualified from

receiving unemployment benefits because the evidence was "sufficient to establish that Clay was discharged due to misconduct in connection with work." Clay appealed the deputy commissioner's decision to an appeals examiner.

<u>When Clay Challenges the Deputy Commissioner's Ruling, the Evidence from the Initial Hearing is Made a Part of the Record on Appeal.</u>

In connection with his appeal of the deputy's denial of benefits, Clay sought a subpoena seeking documents from employer detailing similar incidents and related discipline of other employees for similar offenses. The request was denied by the examiner—although the ruling left open the possibility that the discovery request could be revisited if necessary. No request to reopen the issue was ever pursued.

Subsequently, rather than appear for the appeal, employer notified the VEC that it "does not contest benefits in the above referenced matter. As such, the Respondent respectfully declines to participate further in the appeals process." The employer, consistent with this notice, did not appear at the appeal proceedings before the appeals examiner or the VEC, nor did it file any additional documentation.

At the appeal before the appeals examiner, Clay was the only live witness. He confirmed again that he had passed through the barrier without security's approval. He indicated that he was not aware of a rule he had violated and there was no signage telling him not to breach the barrier. He also claimed that he and others had "bypassed the straps" in the past and had not been discharged. The appeals examiner considered Clay's testimony along with the underlying record from below. He determined that although the employer had failed to appear to contest the benefits, the record made plain that Clay had violated the work rule and breached security. He further concluded that Clay's testimony was inconsistent; in particular, Clay's claim that he had done this before was inconsistent with his original admission that he had never passed through

without permission, and his claim that he did not know what rule he violated was inconsistent with his acknowledgement that he crossed a security barrier without permission.

The appeals examiner made the specific finding that Clay's inconsistent positions weakened his credibility:

> The Appeals Examiner asked the claimant for the reason the employer gave him for the discharge. He stated he was not sure why he was discharged, he performed the job to the best of his ability. When the Appeals Examiner told him the employer indicated in its documents to the Commission, that he entered a roped-off area, he again stated, he did his job to the best of his ability. After the Appeals Examiner asked the question again, he answered, "It was allowed in the past." He also stated, to his knowledge, there was no sign that instructed people not to enter the area. He also testified he did not know of any rule he had violated.
>
> On . . . the Claimant's Statement Concerning Discharge/Suspension, dated June 20, 2019, he wrote he was discharged, because he crossed a barrier. In addition, according to the notes written by the Deputy during the fact finding interview held on June 27, 2019, the claimant acknowledged he was discharged, because he walked through a security barrier without permission. The claimant's inconsistent statements to the Commission weaken his credibility.

In mitigation of the offense, Clay testified that others had committed similar infractions in the past without getting fired. However, he brought no other witnesses to confirm this allegation. With no witnesses corroborating this claim, and no specific incidents identified, the appeals examiner flatly rejected the mitigation claims:

> The claimant did not provide any details to support his statement. For example, he did not provide witness testimony, written statements, names of employees, date of occurrences, or details of disciplinary histories of these alleged coworkers. Therefore, the Appeals Examiner finds no mitigating circumstance has been presented to justify or excuse the misconduct for which he was discharged.

<u>The VEC Upholds the Denial of Benefits and The Circuit Court Upholds the VEC's Ruling.</u>

Clay then appealed his denial of benefits to the Commission. The VEC echoed the appeals examiner's factual findings—and concluded that Clay had committed misconduct. The VEC found that Clay's inconsistent statements "tainted" his credibility and that his absence of detail or corroboration regarding "other incidents" of line-skipping rendered claims of mitigation wholly unproved. Accordingly, his disqualification for benefits was again upheld.

Clay next appealed the VEC's ruling to the Circuit Court for Campbell County, invoking Code § 60.2-625. This statute provides that judicial review of VEC decisions be limited to questions of law. At the circuit court hearing, both Clay and the Commission agreed that "it is the burden of the Employer to prove that there was misconduct in connection with work which caused the discharge." Clay argued that the employer—in refusing to participate in the appeal proceedings—had failed to meet its evidentiary burden and that the Commission, therefore, erred in holding that Clay was disqualified from unemployment benefits. The Commission argued that it properly relied on the evidence contained in the record and that this documentation included filings presented by the employer at "the initial level at the Commission." The Commission further argued that the employer's withdrawal of its objections did not override the Commission's statutory mandate to administer the provisions of the law and to pay only those claims which are proper. The circuit court affirmed the Commission's decision. This appeal followed.

## STANDARD OF REVIEW

"In all 'judicial proceedings' involving VEC appeals, 'the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." *Smith*, 59 Va. App. at 520 (quoting Code § 60.2-625(A)). "A decision by the VEC that conjoins both factual and legal

issues presents a 'mixed question' on review." *Id*. (quoting *Snyder v. Va. Emp. Comm'n*, 23 Va. App. 484, 491 (1996)). "In such cases, we segregate (to the extent we can) the law from the facts—reviewing the law *de novo* and the facts with the deference required by Code § 60.2-625(A)." *Id*. "We do so, however, mindful of the overarching premise that 'a reviewing court cannot substitute its own judgment for the agency's on matters committed by statute to the agency's discretion.'" *Id*. (quoting *Trent*, 55 Va. App. at 568).

The determination of credibility is a factual matter reserved to the Commission. *Va. Emp. Comm'n. v. Gantt*, 7 Va. App. 631, 635 (1989). The Commission's findings may be rejected only if, in considering the record as a whole, a reasonable mind would necessarily come to a different conclusion. *Craft v. Va. Emp. Comm'n*, 8 Va. App. 607, 609 (1989).

"Whether the Commission properly disqualified appellant under Code § 60.2-618 is a mixed question of law and fact." *Williamson v. Va. Emp. Comm'n*, 56 Va. App. 14, 21 (2010). "Therefore, a finding of disqualification does not enjoy the deference accorded a finding of fact, but is subject to judicial review." *Id*. (quoting *Whitt v. Race Fork Coal Corp.*, 18 Va. App. 71, 73 (1994)). The employer "bears the burden of proof to show [that an] employee committed misconduct." *Id.* "If an employer presents *prima facie* evidence of misconduct, the burden shifts to the claimant to prove 'circumstances in mitigation of such conduct.'" *McNamara v. Va. Emp. Comm'n*, 54 Va. App. 616, 628 (2009) (quoting *Branch v. Va. Emp. Comm'n*, 219 Va. 609, 611-12 (1978)).

ANALYSIS

Clay alleges: (1) the VEC decision wrongly disregarded the employer's burden to prove misconduct, (2) there was insufficient evidence to prove misconduct, and (3) it was error to find that Clay was disqualified from receiving benefits. He asserts that the circuit court erred in upholding the VEC's ruling.

- 7 -

I. <u>VEC Rules Permit the Commission to Review the Entire Record and Clay's Argument that He Must Prevail if the Employer Declines to Continue through the Appeals Process is not Consistent with Governing Rules.</u>

Clay is correct that the burden to prove misconduct lies with the employer. *See, e.g.*, *Brady v. Hum. Res. Inst. of Norfolk, Inc.*, 231 Va. 28 (1986). Clay, accordingly, posits the theory that when the employer withdraws from the proceedings, the claimant must prevail and be awarded benefits by the VEC. Clay's desired outcome, however, is not supported by the record in this case or by VEC rules.

Here, the employer submitted documentation—a "Record of Facts"—prior to the deputy commissioner's initial review. Moreover, Clay submitted a statement that amounted to a confirmation of the rule violation. All such documentation became part of the record below. After the deputy rejected Clay's claim, the matter went forward to an appeals examiner. VEC rules specifically permit the appeals examiner to make prior filings part of the record and to consider them:

> The appeals examiner shall control the order of proof, rule upon the admission of evidence, and may examine and cross-examine witnesses. . . . At a hearing, the parties, counsel, or duly authorized representatives shall be given an opportunity to cross-examine witnesses, to inspect documents, and to offer evidence in explanation and rebuttal. On motion of the appeals examiner, or any party, *documents already in a claimant's file or obtained during the course of a hearing may be admitted into the record as exhibits provided they are relevant to the issues in dispute.* Before the hearing is closed, the parties shall be given an opportunity to present oral argument on all the issues of law and fact to be decided.

16 VAC 5-80-20(F)(4) (emphasis added.)[1] The appeals examiner, here, did consider the documentation from the earlier proceedings.

---

[1] Code § 60.2-111 gives the Commission the power and authority to adopt, amend, or rescind its own rules and regulations; it also provides that the Commission "shall determine its own organization and methods of procedure in accordance with provisions of this title." Code § 60.2-619(A)(1) provides that in the initial level of review, a deputy of the VEC "shall promptly

Similarly, the Commission, under 16 VAC 5-80-30(B), is permitted to consider the documentation in the record to reach its determinations. In this case, there were documents filed by the employer at the initial inquiry, including a separation report, general rules, and a record of facts, that documented Clay's misconduct. After reviewing the record, the appeals examiner and Commission found that Clay had been discharged for misconduct. The VEC's ruling was largely based on factual findings that: (1) Clay had violated a work rule, (2) his credibility was tainted by later attempts to distance himself from his initial admission, and (3) he failed to provide any concrete evidence to corroborate claims of mitigation relating to the misconduct.[2]

By statute, the Commission's factual findings must be upheld if they are supported by the record. "In all 'judicial proceedings' involving VEC appeals, 'the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." *Smith*, 59 Va. App. at 520 (quoting Code § 60.2-625(A)). The determination of credibility is a factual matter reserved to

examine the claim." Code § 60.2-619(A)(1)(a) instructs the deputy to "[d]etermine whether or not such claim is valid." If it is determined invalid, it will be referred to an appeal tribunal or the Commission, who shall make a determination in accordance with Code § 60.2-620. Code § 60.2-619(A)(1)(b). Code § 60.2-620 provides that after a "fair hearing," the appeal tribunal "shall have jurisdiction to consider all issues with respect to the claim since the initial filing thereof. Such tribunal shall affirm, set aside, reverse, modify, or alter the findings of fact and decision of the deputy . . . ." Code § 60.2-618(2) reads that "[a]n individual *shall be disqualified* for benefits upon separation from [his employer] . . . *if the Commission finds* such individual is unemployed because he has been discharged for misconduct connected with his work." (Emphasis added).

[2] The Commission argues that the employer's withdrawal does not limit the Commission's statutory mandate to pay only those claims which are proper and to administer the provisions of the law consistent with its rules. *See, e.g.*, *Tyco Elecs. v. Vanpelt*, 62 Va. App. 160, 168 n.1 (2013) ("[A] party can concede the facts but cannot concede the law." (quoting *Logan v. Commonwealth*, 47 Va. App. 168, 172 (2005) (*en banc*))); *see Logan*, 47 Va. App. at 172 ("Our fidelity to the uniform application of law precludes us from accepting concessions of law made on appeal. Because the law applies to all alike, it cannot be subordinated to the private opinions of litigants."). Here, while it may seem counter-intuitive for benefits to be denied in the employer's absence, the factual background in this case and VEC rules permit this outcome where compelling evidence of misconduct is present in the record.

the Commission. *Gantt*, 7 Va. App. at 635. The Commission's findings may be rejected only if, in considering the record as a whole, a reasonable mind would necessarily come to a different conclusion. *Craft*, 8 Va. App. at 609. We next weigh whether the Commission's findings were so unreasonable that they cannot stand.

## II. The Evidence is Sufficient to Support the VEC's Finding of Misconduct and the Circuit Court Properly Upheld Clay's Disqualification from Receiving Benefits.

The governing statutes provide for unemployment benefits to be paid only to those who find themselves unemployed "without fault on their part." *Israel v. Va. Emp. Comm'n,* 7 Va. App. 169, 172 (1988) (quoting *Ford Motor Co. v. Unemployment Comp. Comm'n*, 191 Va. 812, 824 (1951)). Code § 60.2-618(2)(a) prohibits benefits "*if the Commission finds* such individual is unemployed because he has been discharged for misconduct connected with his work." (Emphasis added).

Clay argues that he offered uncontested evidence to dispute any alleged misconduct because no one else testified at his hearing before the appeals examiner. He similarly contends that he established mitigation because he testified that other employees had been allowed to pass through the security barrier previously without punishment and that guards had previously given him permission to cross through the security barrier.[3] As noted, however, VEC rules permitted

---

[3] In reaching its findings, the VEC is not free to arbitrarily disregard credible, uncontested evidence. *Commonwealth, Dep't of Soc. Servs. v. Flaneary*, 22 Va. App. 293, 305 (1996) ("[T]he trier of fact must determine the weight of the testimony and the credibility of the witnesses, but it may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record." (internal citations omitted)); *cf. Grayson v. Westwood Buildings L.P.*, 300 Va. 25, 71 (2021) ("[This] rule only forbids courts from *arbitrarily* disregarding such evidence. . . . A court can also disregard an uncontradicted statement that is flatly inconsistent with the facts in the record or when the background facts expressly or implicitly diminish the believability of the statement." (internal citations omitted)). This case presents the unusual posture in which the claimant—while the only live witness—made earlier admissions that helped establish his misconduct. His earlier statements also were found to be inconsistent with his subsequent testimony. The Commission specifically found these inconsistencies undercut his credibility.

the Commission to review the whole record, including prior documentation. This review of the record reveals that Clay wrote a statement admitting he went through the barrier "without permission" and usually "the security guard [waved] him through" though on this day "no security guard waived [him] through." He wrote "[t]his was the only time I did it without authorization from the security guard." Employer's documentation noted "[y]ou have to pass through security guards" to enter the facility, that Clay breached security, and did "not have authorization to go through the line." The appeals examiner noted that when asked about the incident Clay explained "it was allowed in the past," but the claimant had previously acknowledged such incidents occurred only with a security guard's permission. The appeals examiner found Clay knew or should have known that it was a work violation to walk through the rope barrier without permission, and Clay was discharged for misconduct. Clay's claims of mitigation were similarly rejected.[4]

On appeal, the Commission reviewed the record and opined that it "[reflected] that the Employer discharged the claimant for a rule violation, specifically entering a cordoned-off area without authorization from a security officer." The Commission noted that the employer was a facility whose security was governed by the Nuclear Regulatory Commission, that Clay had worked at the facility for more than sixteen years, was familiar with the security process, and that he entered a "cordoned-off" area without permission of a security officer.

The Commission also found that Clay had not offered sufficient evidence to mitigate his misconduct—Clay's proof consisted only of his own conclusory testimony, which the

---

[4] Clay's appeal is from the circuit court's ruling, upholding the VEC's decision. Under Code § 60.2-625(A) the circuit court also is limited to review of legal issues and must accept the VEC's factual findings that are supported by the record, in the absence of fraud. The circuit court ruled that there was no fraud below and that ruling is unchallenged on appeal.

Commission weighed in coming to its decision.[5] Further, the Commission noted that Clay's credibility was tainted by changes in his position and that his undetailed claims failed to establish any mitigation regarding the offense.

On appeal from VEC decisions, courts do not reweigh conflicts in the evidence; the Commission's findings of fact are binding if they are supported by the record, even if the reviewing court may have reached a very different conclusion. *Brady*, 231 Va. at 29. There is no error in the circuit court's affirmation of the VEC decision that Clay's misconduct met the disqualification requirements of Code § 60.2-618(2)(a).

CONCLUSION

For the foregoing reasons, we affirm the ruling of the circuit court which upheld the VEC's denial of benefits.

*Affirmed.*

---

[5] Notably, the Commission denied Clay's initial request for the issuance of a *subpoena duces tecum* prior to the hearing before the appeals examiner on the basis that "[t]he employer has the burden to prove misconduct. Among other things, the claimant's attorney will have the opportunity to question the Employer representative, if present at the hearing . . . ." We note that Clay ultimately had no opportunity to cross-examine witnesses per 16 VAC 5-80-20(F)(4) because the employer declined to appear. However, this discovery issue is not before us on appeal.